IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| JORGE SANTIAGO AGUILERA,<br><br>      Plaintiff,<br><br>v.<br><br>ZACHARY W. DAVIS, et al.,<br><br>      Defendants. | Civ. No. 15-881-RGA |

Jorge Santiago Aguilera, New Castle, Delaware. Pro Se Plaintiff.

Lauren Patrice DeLuca, Esquire, and Matthew F. Boyer, Esquire, Connolly Gallagher LLP, Wilmington, Delaware. Counsel for Defendants.

**MEMORANDUM OPINION**

September 1᠎᠎, 2017
Wilmington, Delaware

*Rihard G. Andrews*
**ANDREWS, U.S. District Judge:**

Plaintiff Jorge Santiago Aguilera appears *pro se* and has been granted leave to proceed *in forma pauperis*. He commenced this employment discrimination action against Defendants Zachary W. Davis ("Davis") and Davis-Young Associates, Inc. ("Davis-Young") on October 1, 2015. (D.I. 2). The complaint alleges employment discrimination by reason of disability pursuant to the Rehabilitation Act of 1973, as amended, 29 U.S.C. §§ 701, *et seq.* ("Rehab Act"), and the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. §§ 12101, *et seq.* ("ADA"). The Court has jurisdiction pursuant to 28 U.S.C. § 1331. Before the Court are the parties' cross-motions for summary judgment.[1] (D.I. 31, 34). Briefing on the matters has been completed.

## I. LEGAL AND FACTUAL BACKGROUND

Plaintiff alleges employment discrimination by reason of disability resulted in the termination of his employment (D.I. 2). Approximately twenty-two years ago, Plaintiff began working as a laborer for Davis-Young, a landscaping company. (D.I. 33 at Ex. 1; D.I. 33-1 at Ex. 2 at p.7). Plaintiff became a master mason. (D.I. 33-1 at Ex. 2 at p.7). As a master mason, Plaintiff reported to Davis for his work assignments. (D.I. 33 at Ex. 1; D.I. 33-1 at Ex. 2 at p.8). Plaintiff worked 40 hours per week, depending on the weather. (D.I. 33-1 at Ex. 2 at p.8). Plaintiff understood that he was to "always notify either Mr. Davis or Mr. [Timothy] Young," the other co-owner of Davis-Young, when he had a doctor's appointment. (*Id.*).

---

[1] Plaintiff belatedly filed his cross-motion for summary judgment. It will be considered given his *pro se* status.

Plaintiff suffered a work related back injury on February 26, 2003, received workers' compensation benefits, and returned to work on March 8, 2003. (D.I. 33 at Ex. 1). Davis never considered the back injury a reason to terminate Plaintiff's employment as long as he was willing and able to work. (*Id.*). Plaintiff suffered another work related back injury in July 2013. (D.I. 33 at Ex. 1; D.I. 33-1 at Ex. 2 at p.10; D.I. 37 at p.1). Davis-Young accommodated Plaintiff and provided him full-time work within his doctor's work restrictions, on "medium duty" as of August 2013. (D.I. 33 at Ex. 1; D.I. 33-1 at Ex. 2 at p.11).

Plaintiff reported to work at 7:30 a.m. on the morning of October 24, 2014. (D.I. 33 at Ex. 1; D.I. 33-1 at Ex. 2 at p.11). He was performing a work related duty and was laying under a wheelbarrow when he had very intense back pain and could not get up. (D.I. 33-1 at Ex. 2 at p.11; D.I. 37 at p.1). Plaintiff called his father, who is also employed at Davis-Young, for a ride home. (*Id.*). After he was taken home, Plaintiff drove to see a physician who evaluated him for low back pain. (D.I. 33-1 at Ex. 2 at p.12, Ex. 3 at p.1). The physician recommended a follow-up appointment and for Plaintiff to rest, avoid strenuous activity, apply heat and ice to the area, avoid heavy lifting, and take medication as prescribed. (*Id.* at Ex. 3 at p.1). The physician provided Plaintiff a Duty Form that indicated his work status was "Modified duty as of 10/24/14. Anticipated date of return to full duty 10/31/14." (D.I. 33 at Ex. 1E; D.I. 33-1 at Ex. 2 at p.13). During his deposition, Plaintiff testified that the form meant he could return to work as of October 24, 2014. (D.I. 33-1 at Ex. 2 at p.13). He also testified that he could not return to work because he could not walk. (D.I. 33-1 at Ex. 2 at p.13; D.I. 37 at p.1). Plaintiff gave the Duty Form to his father to deliver to Davis-Young the following

2

Monday, October 27, 2014. (*Id.*) Davis believes he saw the form about a week or a week and a half later. (D.I. 33 at Ex. 1).

Plaintiff believes he left a voicemail message for Davis on October 24, 2014 to let him know why he left work and cell phone records indicate that Plaintiff called Davis at 8:48 a.m. in the morning. (D.I. 11 at p.2; D.I. 32 at Ex. 5 D.I. 33-1 at Ex. 2 at p.12; D.I. 35 at p.3). Plaintiff testified that he did not tell Davis how much time he needed off from work, "I didn't tell him how long, no because, and maybe it was my mistake, that I thought it was the same treatment as the first injury." (D.I 33-1 at Ex 2 at p.15). He also testified that, while he did not actually speak with Davis, he left a voicemail telling Davis "what the doctor had said, which was to take medication and rest for two weeks." (*Id.* at p.12).[2] Plaintiff did not report to work the following week, beginning October 27, 2014, or communicate with Davis or anyone at Davis-Young that week, outside of having his father deliver the Duty Form on October 27, 2014, that indicated he was able to work. (D.I. 33 at Ex. 1; D.I. 33-1 at Ex. 2 at 13). Telephone records indicate that, other than on October 24, 2014, Plaintiff made no calls to Davis or to Davis-Young between October 24, 2014 and November 17, 2014. (D.I. 32-5 at Ex. 5).

Davis was under pressure from a customer to complete a job at the job site where Plaintiff had been working and, as a result, he was forced to find a laborer to fill in for Plaintiff to finish the job. (D.I. 33 at Ex. 1). Around October 28, 2014, Davis filled the job with a laborer from Hardy Landscape, LLC, who was already a subcontractor at that worksite. (*Id.*).

---

[2] Plaintiff appears to acknowledge that this could not actually be accurate, as he notes that his telephone call to Davis preceded his visit to the doctor. (D.I. 35 at p.3).

3

Plaintiff did not report for work or communicate with Davis-Young from October 30, 2014 through November 6, 2014. (D.I. 33 at Ex. 1). Both Davis and Young asked Plaintiff's father where Plaintiff was, but he had no information other than that Plaintiff was hanging out in the basement in the house he shared with his father. (*Id.*). Davis recalled an earlier conversation with Plaintiff when he was told that Plaintiff was looking for other employment. (*Id.*). Davis concluded that Plaintiff had decided to abandon his job with Davis-Young since he left his job and did not return or update Davis. (*Id.*)

Plaintiff had no contact with Davis or Davis-Young until November 7, 2014, when he came to the office to collect his pay check. (D.I. 33 at Ex. 1; D.I. 33-1 at Ex. 2 at p.17). Plaintiff testified that at that time, Davis informed him he no longer had a job with Davis-Young. (D.I. 33-1 at Ex. 2 at p.17).[3] Plaintiff returned to Davis-Young on November 17, 2014, and he testified that on that date Davis again told him that he no longer had a job at Davis-Young. (*Id.* at 20). Davis agrees that he told Plaintiff on November 17, 2014, that he no longer had a job. (D.I. 33 at Ex. 1). According to Davis, Davis-Young was prepared to accommodate Plaintiff's work limitations and had medium duty work available for Plaintiff to complete when he abandoned his job on October 24, 2014. (*Id.*)

Plaintiff filed a charge of discrimination on December 23, 2014, alleging disability discrimination following his October 2014 injury for failure to accommodate and employment termination. (D.I. 2 at p.4).

---

[3] Davis seems to dispute the events of November 7, 2014 (D.I. 33 at p.5), but both parties agree that Plaintiff did not return to Davis-Young any earlier than November 7, 2014. For purposes of summary judgment, I accept Plaintiff's version as being accurate.

4

## II. LEGAL STANDARDS

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A "material fact" is one that "could affect the outcome" of the proceeding. See Lamont v. New Jersey, 637 F.3d 177, 181 (3d Cir. 2011). The moving party bears the burden of demonstrating the absence of a genuine issue of material fact. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 n.10 (1986). The court will "draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000).

If the moving party is able to demonstrate an absence of disputed material facts, the nonmoving party then "must come forward with 'specific facts showing that there is a genuine issue for trial.'" Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). The mere existence of some evidence in support of the nonmoving party, however, will not be sufficient for denial of a motion for summary judgment. Id. Rather, the nonmoving party must present enough evidence to enable a jury to reasonably find for it on that issue. Id. If the nonmoving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to judgment as a matter of law. See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

With respect to summary judgment in a discrimination case, the Court's role is "to determine whether, upon reviewing all the facts and inferences to be drawn therefrom in the light most favorable to the plaintiff, there exists sufficient evidence to

5

create a genuine issue of material fact as to whether the employer intentionally discriminated against the plaintiff." *Hankins v. Temple Univ.*, 829 F.2d 437, 440 (3d Cir. 1987). The same standards and burdens apply on cross-motions for summary judgment. *See Appelmans v. City of Philadelphia*, 826 F.2d 214, 216 (3d Cir. 1987).

Defendants moves for summary judgment on the grounds that: (1) the Rehab Act claim fails as a matter of law; (2) the Rehab Act and ADA claims raised against Davis fail as a matter of law; and (3) Plaintiff's employer had a legitimate, non-discriminatory reason for terminating Plaintiff's employment. Plaintiff moves for summary judgment on the grounds that he did not abandon his job and he was wrongfully terminated.[4]

## III. DISCUSSION

### A. Rehab Act

Section 504 of the Rehabilitation Act prohibits programs that receive federal funds from discriminating against an individual based on disability, as follows: "No otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency." 29 U.S.C. § 794(a). Liability does not apply under this statute to the actions of a company such as Davis-Young, unless, at a minimum, the company is

---

[4]In Plaintiff's declaration in support of his motion for summary judgment, he provides facts and, it appears, attempts to raise claims that were neither before the EEOC nor alleged in his Complaint. They are not considered by the Court.

6

the recipient of federal financial assistance. *See A.W. v. Jersey City Pub. Sch.*, 486 F.3d 791, 804 (3d Cir. 2007) ("Suits may be brought pursuant to Section 504 against recipients of federal financial assistance, but not against individuals.").

Davis-Young is a Delaware landscape contractor. (D.I. 33, ¶¶ 1-2). There is no evidence of record that Plaintiff's employer receives any kind of federal funding. The Rehab Act claim fails as a matter of law and, therefore, the Court will grant Defendants' motion for summary judgment as to this claim.

### B. Individual Liability

It is well established that individuals cannot be held liable under Title I of the ADA. *See N'Jai v. Floyd*, 386 F. App'x 141, 144 (3d Cir. 2010); *Koslow v. Pennsylvania*, 302 F.3d 161, 178 (3d Cir. 2002). Therefore, the Court will grant Defendants' motion for summary judgment as to the ADA claims raised against Davis.

### C. Disability Discrimination

Defendants move for summary judgment on the grounds that Davis-Young had a legitimate, nondiscriminatory reason for terminating Plaintiff, and there is no evidence his termination was a pretext for discrimination. Conversely, Plaintiff contends Davis-Young failed to accommodate his disability, and he was terminated because of the disability.

A plaintiff may prove disability discrimination by direct evidence as set forth in *Price Waterhouse v. Hopkins*, 490 U.S. 228, 244-46 (1989), or indirectly through the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Because Plaintiff did not present direct evidence of discrimination, he must proceed under the burden-shifting framework. *See Matczak v. Frankford Candy &*

7

*Chocolate Co.*, 136 F.3d 933, 938 (3d Cir. 1997). Under this framework, Plaintiff must first establish a *prima facie* case of discrimination by demonstrating: (1) he is disabled within the meaning of the ADA, (2) he is otherwise qualified for the job, and (3) he was subjected to an adverse employment action because of that disability. *McDonnell Douglas*, 411 U.S. at 802; *Turner v. Hershey Chocolate U.S.*, 440 F.3d 604, 611 (3d Cir. 2006). The elements for failure to accommodate under the ADA are the same except for the third prong, which is the employer had notice of Plaintiff's disability and failed to provide such accommodation. *Kralik v. Durbin*, 130 F.3d 76, 78 (3d Cir. 1997).

If Plaintiff succeeds in establishing a *prima facie* case, the burden shifts to Davis-Young to proffer "legitimate non-discriminatory" reasons for its actions. *See Reeves*, 530 U.S. at 142. If Davis-Young meets this burden, the burden again shifts to Plaintiff to demonstrate, by a preponderance of the evidence, that the employer's rationale is pretextual. *Id.* at 142-43. To do this, Plaintiff must "point to some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." *Fuentes v. Perskie*, 32 F.3d 759, 764 (3d Cir. 1994). "[T]o avoid summary judgment, the plaintiff's evidence rebutting the employer's proffered legitimate reasons must allow a factfinder reasonably to infer that each of the employer's proffered non-discriminatory reasons was either a *post hoc* fabrication or otherwise did not actually motivate the employment action (that is, the proffered reason is a pretext)." *Id.* (emphasis omitted).

8

Defendants do not contest that Plaintiff has shown a *prima facie* case of disability discrimination. Instead, they seek summary judgment on the grounds that Plaintiff has not produced evidence from which a reasonable juror could find that Davis-Young's reason for its employment decision was a pretext for discrimination.

Davis-Young articulated a legitimate, nondiscriminatory reason for its actions. Plaintiff reinjured his back on October 24, 2014, and he called Davis that day. A duty form filled out by his physician and provided to Davis-Young indicated that Plaintiff could return to medium work the same day as his injury, and he could return to full duty on October 31, 2014. He did not do so, and he did not contact Plaintiff to explain why he had not returned to work. In addition, Plaintiff testified that, in not returning to work, he relied upon treatment he had received for a prior injury because he believed it was the same, although "maybe" it was a "mistake" to do so. (D.I. 33-1, Ex. 2, at p.15). Finally, as noted, Plaintiff had no contact with Davis-Young until he appeared to retrieve his paycheck on November 7, 2014, two weeks following his injury. Plaintiff then learned he was terminated. Davis believed that Plaintiff had abandoned his job on October 24, 2014, and considered him terminated. When Plaintiff next appeared on November 17, 2014, he was told he no longer worked for Davis-Young.

Nothing before the Court contradicts Davis-Young's proffered reason for the actions it took. Nor is it proffered reason for its actions weak, incoherent, implausible, or so inconsistent that a reasonable factfinder could rationally find them unworthy of credence. *See Sarullo v. United States Postal Serv.*, 352 F.3d 789, 800 (3d Cir. 2003). In addition, Plaintiff has provided no evidence from which a fact-finder could either disbelieve Davis-Young's articulated reason, or believe that discriminatory reasons

9

were more likely than not the cause of the employment actions. See *Williams v. Borough of West Chester, Pa.*, 891 F.2d 458, 460-61 (3d Cir. 1989) (the non-movant must present affirmative evidence--more than a scintilla but less than a preponderance--which supports each element of her claim to defeat a properly presented motion for summary judgment).

To the extent Plaintiff contends that Davis-Young did not accommodate his disability, the records reflects that Davis-Young consistently accommodated Plaintiff's work related restrictions and was prepared to once again accommodate him. Notably, on the date Plaintiff was injured, he was on medium duty as a result of his previous work related injury and, in the past, has been on medium duty for over a year. Rather than failing to accommodate Plaintiff, the record reflects that Plaintiff did not return to work following the October 2014 injury. As a result, Davis-Young was never provided an opportunity to accommodate Plaintiff, as it had done in the past and as it was prepared to do following the October 2014 injury.

As there is no genuine dispute on the dispositive legal issue of whether Davis-Young had a discriminatory motive, the Court will grant Defendants' motion for summary judgment as to the issue of employment discrimination by reason of disability and will deny Plaintiff's motion for summary judgment.

## IV.  CONCLUSION

For the above reasons, the Court will grant Defendants' motion for summary judgment (D.I. 31) and will deny Plaintiff's motion for summary judgment (D.I. 34). A separate Order consistent with this Memorandum Opinion will be issued.